RAYMOND J. STEVENS and NANCY J. STEVENS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stevens v. Comm'r
Docket No. 26550-81.
United States Tax Court
T.C. Memo 1985-16; 1985 Tax Ct. Memo LEXIS 613; 49 T.C.M. (CCH) 491; T.C.M. (RIA) 85016; January 10, 1985. *613 John W. Knapp, for the petitioners. Daniel P. Ramthun, for the respondent. GOFFE MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency of $1,029 in petitioners' Federal income tax for the taxable year 1978. The sole issue for our decision is whether *614 petitioner Raymond J. Stevens was "away from home" within the meaning of section 162. [1]
FINDINGS OF FACT Some of the facts of this case have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioners, husband and wife, resided in Hillsborough, California, when the petition in this case was filed. They filed a joint Federal income tax return for the taxable year 1978. Nancy J. Stevens is a party herein by reason of filing a joint Federal income tax return with her husband for the taxable year 1978. All references to petitioner in the singular will refer to Raymond J. Stevens. Petitioner is a locomotive engineer who, at the time of trial, had been employed by the Southern Pacific Railroad Company for 32 years. During the taxable year 1978, he was regularly assigned the San Jose-San Francisco commuter run. Petitioner's home terminal during 1978 was in San Jose. The distance between San Jose and San Francisco is approximately 47 miles. Petitioner's job is very demanding and stressful and requires his full concentration at all times. *615 A single run to San Francisco involves traveling over 52 grade crossings. There is the constant sound of whistles blowing and bells ringing, and other trains are often only three to five minutes behind and ahead. Trains running up the peninsula reach top speeds of about 70 miles an hour. By the time the train reaches its final destination, petitioner has picked up from 700 to 1400 passengers. On a typical one-trip [2] day, petitioner goes on duty in the round house in San Jose at 5:08 a.m., inspects his locomotive, takes it to the passenger depot and attaches it to a train, normally consisting of five to nine passenger cars. Approximately 35 to 40 minutes after he goes on duty, petitioner makes his run from San Jose to San Francisco, picking up commuters at almost every station along the way. Upon reaching San Francisco, petitioner pulls into the station and the passengers disembark. After attending to his engine, petitioner goes into the *616 round house, signs a register, and is released at 7:45 a.m., as mandated by the Federal Hours of Service Act, 45 U.S.C. sec. 61 et seq. (1982). He remains in San Francisco for 8 hours. During the 8-hour break on the one-trip day, petitioner first eats breakfast. Because there are no restaurants near the round house, he must go into the city of San Francisco to find a place to eat. After breakfast, petitioner returns to the bunk house provided by the Southern Pacific Railroad Company[3] to lie down and rest, occasionally for 4 or 5 hours. After resting, he exercises, returns to the city for a late lunch, and then goes back to the bunk house for some more rest. Petitioner is considered on duty during his 8-hour break even though he is free to do anything he wishes during that time, except drink alcoholic beverages. He is not subject to call for duty during this period. At approximately 3:45 p.m., petitioner returns to the round house, picks up his engine, attaches it to another train, and makes his return run *617 to San Jose, arriving at about 5 p.m. He is released from duty in San Jose at 6:30 p.m. On an average one-trip day, petitioner is considered on duty for a total of 13 hours and 22 minutes. On a two-trip day, petitioner goes on duty at 4:30 in the morning. His train leaves San Jose at 5:05 a.m., picking up passengers at every stop as it heads up the peninsula, arriving in San Francisco at 6:30 a.m. Once in San Francisco, petitioner is allowed to leave his engine in order to get coffee and doughnuts and to relax for 10 or 15 minutes. At 7:10 a.m., he makes a run back to San Jose, arriving at 8:30 a.m. At 8:52 a.m., petitioner makes the first run of his second trip back to San Francisco, arriving at 10:30 a.m. He is released from duty at 11:00 a.m. Upon his release, petitioner goes to the bunk house to rest or relax for about 15 minutes. After lunch, petitioner reports back to work at 1:20 p.m. At 1:50 p.m., petitioner makes his return trip to San Jose where he is finally released from duty at 3:50 p.m., having made two trips covering 188 miles. Petitioner's total time on duty during the two-trip day is 11 hours and 20 minutes. Petitioner incurred expenses for meals *618 on both the one-trip days and the two-trip days and deducted the following amounts: Meals
$2,316
Transportation
219
$2,535
Because his employer provided the sleeping facility, petitioner did not incur costs for lodging. The Commissioner disallowed these deductions for the following reasons: [I]t has not been established that these amounts were for an ordinary and necessary business expense, were expended for the purpose designated or that they were travel expenses away from home within the meaning of Section 162 of the Internal Revenue Code. OPINION The question for decision is whether petitioner's expenses for meals and transportation are deductible under section 162. Section 162(a)(2) provides for the deduction of all ordinary and necessary "traveling expenses (including amounts expended for meals and lodging * * *)" incurred by the taxpayer "while away from home in the pursuit of a trade or business." [4]
*619 The petitioner claims that he was "away from home" in a travel status, within the meaning of section 162(a)(2), when he was released from duty in San Francisco and is in this respect no different from other railroad trainmen who must rest at away-from-home terminals before commencing the return trip to their home terminals. Although respondent does not dispute that petitioner's expenses were incurred by petitioner at his away-from-home terminal, he argues that petitioner's rest periods were merely a function of the train schedule and that the nature of petitioner's work schedule was such that he did not need to be released for sleep or rest. Thus, respondent maintains that petitioner's expenses were personal and, therefore, not deductible under section 162. Respondent has specifically addressed the question of the deductibility of traveling expenses for railroad trainmen and, in 1940, adopted the so-called [5] "sleep or rest" rule: It is held that locomotive engineers and other railroad trainmen, who are required to remain at away-from-home terminals in order to obtain necessary rest prior to making a further run or beginning a return run to the home terminal, are *620 entitled to deduct for Federal income tax purposes the cost or room rental and meals while away from home on such runs. [I.T. 3395, 1940-2 C.B. 64.] We applied a similar construction in two cases. In Osteen v. Commissioner,14 T.C. 1261 (1950), a railroad postal clerk living in Greenville, South Carolina, was assigned a turn-around run to Charlotte, North Carolina. He was on duty continuously for a total of 6 hours and 20 minutes (7:55 p.m. to 2:15 a.m.) including one 30-minute break in Charlotte during which time he ate his third meal of the day. We denied Osteen a deduction for meals at Charlotte because petitioner was in no essentially different position from the worker who is unable to have one of his meals at home. His regular day's work, though it took him away from his home town, was less than seven hours, perhaps shorter *621 than the work day for the ordinary worker. * * * The fact that the meal was eaten at Charlotte offers no material difference. [14 T.C. at 1262.] In Anderson v. Commissioner,18 T.C. 649 (1952), however, the taxpayer was a railroad express employee assigned to trains running between Parsons, Kansas, and Oklahoma City, Oklahoma. His job required him to make two consecutive round trips from Parsons to Oklahoma City and return, layover in Parsons for 45 hours, then resume his duties after the layover for another two consecutive days. He would leave his home terminal in Parsons at 2:30 a.m. and return at 6:00 p.m. the same day. At Oklahoma City he would be released for 2-1/2 hours to eat and rest. The next day, he would leave at 12:00 noon and return at 5:00 a.m. On this trip he would be released for 3 hours. On each trip Anderson ate a meal and slept on a cot provided by the railroad in the baggage car during his release from duty. Although he incurred no lodging expenses, we allowed Anderson to deduct the expenses of both runs, not just the overnight run: We think it is too narrow a view of the facts not to regard both round trips *622 as overnight trips. Furthermore, it was necessary for the petitioner to obtain rest at the end of the outbound run before starting upon the return run. We believe, too, that the determination of the question should not depend upon the length of the rest period. The round trips required 16 and 18 hours during a rest period was necessary. The facts in this proceeding bring this petitioner within the ruling of the Commissioner, I.T. 3395, supra. [18 T.C. 649, 653.] In 1954, the Commissioner attempted to narrow his construction of the deduction as it applied to trainmen. A taxpayer cannot deduct the cost of his meals and lodging as away-from-home expenses merely because his duties require his physical absence from his principal or regular post of duty during part or all of his actual working hours. In order to deduct such expenses, it is essential that his absence on business from his principal or regular post of duty be of such duration that he cannot leave from and return to that location at the start and finish of, or before and after, each day's work; or at least that he cannot reasonably do so without being released from duty for sufficient time *623 to obtain necessary sleep elsewhere. * * * On the other hand I.T. 3395, C.B. 1940-2, 64, holds that railroad employees who are required to remain at an away-from-home terminal in order to obtain necessary rest prior to making a further run, or beginning a return run, may deduct their actual expenses for meals and lodging while away from their home terminal on such runs. The rest period contemplated by that ruling is not satisfied by the brief interval frequantly scheduled on "turn-around" service between the outbound and return runs during which the employee may be released from duty for the purpose of eating rather than sleeping. The line of demarcation between the two situations is generally referred to, for Federal income tax purposes, as an "overnight" trip, that is, a trip on which the taxpayer's duties require him to obtain necessary sleep away from his home terminal. On an "overnight" trip of this nature, and particularly in view of the unusual hours worked in the railroad industry, the employee need not be away from his home terminal for an entire 24-hour day or throughout the hours from dusk until dawn, as evidenced by the recent decision in David G. Anderson v. Commissioner,18 T.C. 649, *624 acquiesce C.B. 1952-2, 1. [Rev. Rul. 54-497, 1954-2 C.B. 75, 78-79.] Subsequently, we discussed the rationale of both Osteen and Anderson in Herrin v. Commissioner,28 T.C. 1303 (1957), where we held that a truck driver could not deduct the cost of three meals on a 14-hour round trip. The driver was not released for rest or sleep at any time. Technically speaking, petitioner's regular working day includes a portion of 2 days. This factor by itself, however, has not been considered of great enough significance to require different tax treatment for nighttime as contrasted with daytime employees. Cf. Fred Marion Osteen,supra. Nor is the proximity in distance to one's home terminal important. Certainly, an employee who travels a 200-mile route will find himself equally as unable to return to his home for meals as an employee who travels a 346-mile route. The distinguishing factor instead has been whether or not the nature of the employment requires that the employee be released from work to obtain necessary sleep or rest prior to the completion of the journey.David G. Anderson,18 T.C. 649. [ *625 Herrin v. Commissioner,28 T.C. 1303, 1305 (1957). Emphasis added.] In Williams v. Patterson,286 F.2d 333 (5th Cir. 1961), the taxpayer, a railroad conductor, worked a 16 to 18-hour day, every other day. On a run between Montgomery, Alabama, his tax home, and Atlanta, Georgia, he had a 6-hour layover in Atlanta prior to his return to Montgomery on the same day. The Court of Appeals for the Fifth Circuit held the cost of meals, lodging, and tips during the 6-hour layover deductible. The Court of Appeals, following our rationale in Anderson, defined the test as follows: [T]he employee is entitled to the deduction if the nature of his employment is such that he is released for sufficient time to obtain sleep and rest and he uses the time for sleep and rest. There are no facts showing that the railroad tied any strings to Anderson's free time. We read Osteen, Anderson, and Herrin, therefore, as not requiring any narrowing of the language of I.T. 3395, 1940-2 Cum.Bull. 64. [286 F.2d 333, 338.] Thus, the Fifth Circuit concluded that 16 hours was in fact substantially longer than an ordinary workday and that it *626 was reasonably necessary for Williams to sleep during his layover in order to carry out his assignment even though no statute, regulation, or railroad order required him to sleep or rest prior to his return run. In Rev. Rul. 61-221, 1961-2 C.B. 34, the Internal Revenue Service announced that it would follow the Patterson construction of the "sleep or rest" rule, a construction similar to that in Anderson v. Commissioner,supra, viewing it as the "correct rule." The Commissioner also reaffirmed his earlier Revenue Ruling 54-497. The Commissioner added, however, that he did not consider a brief period of release for the purpose of eating rather than sleeping as an adequate rest period to satisfy the "sleep or rest" rule. In Hanson v. Commissioner,298 F.2d 391 (8th Cir. 1962), revg. 35 T.C. 413 (1960), the Eighth Circuit rejected the overnight rule using an approach different from that of the Fifth Circuit in Williams. The Eighth Circuit stated that the only test authorized by the statute was whether the taxpayer was "away from home." After a conflict in the circuits developed, the *627 Supreme Court took the opportunity to examine the Commissioner's rule. [6] In United States v. Correll,389 U.S. 299 (1967), the taxpayer, a traveling salesman, lived almost 50 miles from his wholesale grocer-employer's place of business and was compelled to leave his home every morning at 5:00 a.m. in order to be at work at the start of the business day. His daily sales activities were completed by 4:00 p.m., and after phoning in his daily orders he left his employer's office, returning home by 5:30 p.m. The taxpayer deducted the cost of breakfast and lunch eaten on the road as "traveling expenses." The Commissioner disallowed the expenses because the taxpayer's daily trips required neither sleep nor rest. The Supreme Court sustained the Commissioner's determination giving its imprimatur to the Commissioner's "sleep or rest" rule. [7]
*628 In Barry v. Commissioner,54 T.C. 1210 (1970), affd. 435 F.2d 1290 (1st Cir. 1970), we examined the sleep or rest rule of Williams v. Patterson,supra, after Correll. We observed that in Williams the "'rest' involved was substantial in time, and special provision was made for it; his rest was not confined to a mere pause in the daily work routine." 54 T.C. at 1213. We also pointed out that the Commissioner previously held such expenses to be deductible by ruling prior to Williams,I.T. 3395, 1940-2 C.B. 64, and that he announced an intention to follow the Williams decision, Rev. Rul. 61-221, 1961-2 C.B. 34. We concluded that the rest period which is contemplated in the respondent's rule, and which was approved by the Supreme Court in Correll, is the type illustrated by Williams and not "(a brief rest period) that anyone can, at any time, without special arrangement and without special expense, take in his own automobile or office." 54 T.C. at 1213. Furthermore, the sleep or rest rule requires a stop of sufficient duration that it would normally *629 be related to a significant increase in expenses. 435 F.2d at 1291; Chappie v. Commissioner,73 T.C. 823, 830 (1980). In Rev. Rul. 75-170, 1975-1 C.B. 60, long after the Supreme Court decision in Correll, the Commissioner updated and restated his position on the "sleep or rest rule" as applied to railroad employees: * * * [R]ailroad employees who stop performing their regular duties (with their employer's tacit or expressed concurrence) at away-from-home terminals in order to obtain substantial sleep or rest prior to making a return run to the home terminal, are entitled to deduct their costs of meals and lodging (including expenses incident thereto, such as tips) as traveling expenses pursuant to section 162(a) of the Code. Further, such absence need not be for an entire 24-hour day or throughout the hours from dusk until dawn, but it must be of such duration or nature that the taxpayers cannot reasonably be expected to complete the round trip without being released from duty, or otherwise stopping (with their employer's tacit or expressed concurrence) the performance of their regular duties, for sufficient time to obtain substantial *630 sleep or rest. However, the Service does not consider the brief interval during which employees may stop, or be released from duty, for sufficient time to eat, but not to obtain substantial sleep or rest, as being an adequate rest period to satisfy the requirement for deducting the cost of meals on business trips completed within one day. Thus, amounts incurred and paid for such meals are not deductible. [1975-1 C.B. 60, 61; citations omitted. See also Rev. Rul. 75-432, 1975-2 C.B. 60.] Petitioner, as a railroad employee, is subject to the Hours of Service Act (sometimes hereafter referred to as the "Act"), enacted March 4, 1907, 45 U.S.C. sec. 61 et seq. This Act, in general, provides that it is unlawful for a railroad (1) to require or permit an employee who has been continuously on duty for 12 hours [8] to continue on duty or to go on duty until he has had at least 10 consecutive hours off duty; or (2) to require or permit an employee to continue on duty or to go on duty when he has not had at least 8 consecutive hours off duty during the preceding 24 hours. 45 U.S.C. sec. 62. *631 The Act also provides that time on duty commences when the employee reports for duty and terminates when the employee is released from duty and includes interim periods available for less than 4 hours rest at designated terminals. See 45 U.S.C. sec. 61. The purpose of the Hours of Services Act is to promote safety in operating trains by preventing excessive mental and physical strain whcih results from remaining too long at an exacting task. Chicago & Alton R.R. Co. v. United States,247 U.S. 197 (1918). The need for the Act was made manifest by deplorable casualties attributable to the fact that men were required to operate trains after exhausting their physical and mental powers. Atchison, Topeka & Santa Fe Ry. Co. v. United States,269 U.S. 266 (1925). After examining the development and present status of the sleep or rest rule, we conclude that the rule's purpose of promoting safety does not mandate a finding for petitioners in this case. Petitioner receives an 8-hour break on his one-trip day, but receives only brief breaks on his two-trip day, which could be presumed to be at least twice as arduous as *632 the one-trip day. As to the 2-hour-and-20-minute release period on the two-trip days, petitioners have not made a showing sufficient to meet their burden of proving that the purpose of this period of release was to obtain substantial sleep or rest. Petitioner testified that, after eating, he would lie down for 15 minutes and that sometimes he would do this "in the engine when it's in the depot." Thus, petitioners have not shown that the rest during the shorter release period was substantial in time, that special provision was made for it, or that it was more than a mere pause in petitioner's daily work routine. See Barry v. Commissioner,54 T.C. 1210 (1970), affd. 435 F.2d 1290 (1st Cir. 1970). The longer release period on the one-trip days results solely from the combination of petitioner's schedule and Federal regulation, and appears to have little relationship to petitioner's actual need for substantial rest or sleep. Only a 4-hour rest period was actually required by regulation, as petitioner's total work day would then have been less than 12 hours. The fact that petitioner's work day did exceed 12 hours was a mere fortuitous result *633 of the fact that the return run on the one-trip day did not take place until late in the day. We are unable to find that the release periods on either the one-trip or two-trip days were required for substantial rest or sleep. Petitioner used the breaks primarily to obtain food or take short breaks for relaxation, and only occasionally used the facilities provided for sleeping. The situation here is no different from that of many employees with long work days. United States v. Correll,supra;Herrin v. Commissioner,supra.
The situation in the instant case is far different from that in Williams v. Patterson,supra, where the 16-hour work day, substantially longer than an ordinary work day, required that the employer provide the employee sufficient time to obtain sleep, and the employee used that time for sleep or rest. The Commissioner's determination that these expenses are not deductible is therefore sustained. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. "One-trip" and "two-trip," as used in this opinion, refer to round trips from San Jose to San Francisco, and return. A "run" is one-half of one trip, either from San Jose to San Francisco or San Francisco to San Jose.↩
3. The rest area provided for its employees by the railroad is a room with bunk beds and special shades which keep the room dark.↩
4. Meals and lodging costs are considered traveling expenses; transportation costs, however, such as bus fare, are different and need not be incurred away from home to be deductible.Sec. 62(2)(C)↩. But see sec. 262.
5. This rule was originally referred to as the "overnight" rule, and the terms are sometimes used interchangeably. There is no requirement, however, that a taxpayer be away from home for an entire 24-hour day or between the hours from dusk until dawn. Anderson v. Commissioner,18 T.C. 649↩ (1952).
6. Commissioner v. Bagley,374 F.2d 204 (1st Cir. 1967); Hanson v. Commissioner,298 F.2d 391 (8th Cir. 1962); Williams v. Patterson,286 F.2d 333↩ (5th Cir. 1961). 7. Williams v. Patterson,supra↩ at 336; see 17 N.Y.U. Tax L. Rev. 261, 273 (1962).
8. Dec. 26, 1969, Pub. L. 91-169, sec. 1, 83 Stat. 463. The statute as originally enacted in 1907 provided for a 16-hour duty period. The 1969 amendment reduced the period to 14 hours and then a 12-hour period effective December 26, 1970.↩