IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| SAM LAFOCA<br>and KIMBERLY A. LAFOCA, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 160022R |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE,<br>State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION**[1] |

Plaintiffs appeal Defendant's Notice of Deficiency Assessment dated October 16, 2015, for the 2011 tax year. A trial was held in the Oregon Tax Court on October 31, 2016, in Salem, Oregon. Sam Lafoca (Lafoca) appeared and testified on behalf of Plaintiffs. Dane Palmer (Palmer) appeared on behalf of Defendant, but did not testify.

The court initially denied the admission of Plaintiffs' Exhibits 1 to 10 because they were not timely submitted to the court or Defendant pursuant to Trial Court Rule-Magistrates Division (TCR-MD) 12 C. During Defendant's cross-examination of Lafoca, Palmer referenced some of Plaintiffs' excluded Exhibits. The court reexamined admission of the documents in light of the cross-examination and admitted Plaintiffs' Exhibit 1, pages 1 to 4, and Exhibit 4, pages 1 to 3. The court held the record open until January 6, 2017, for the parties to submit legal authority on the deductibility of items referred in testimony as "meal penalties." Plaintiffs timely submitted documents. The record closed on January 6, 2017.

/ / /

---

[1] This Final Decision incorporates without change the court's Decision, entered April 20, 2017. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

## I. STATEMENT OF FACTS

In 2011, Lafoca was employed as a full-time cameraman for KTLA in Los Angeles and he also operated his own aerial and sports photography business. Plaintiffs claimed a number of deductions for unreimbursed employee expenses and self-employment business expenses, many of which Defendant denied after an audit.

Lafoca testified that he used a computer to write a check to Run Racing in the amount of $8,000 for commissions owed on his photography sales. Lafoca's computer automatically put the date on the check as "12/29/2010." (Plfs' Ex 1 at 1.) Lafoca testified that he held the check to allow for deposits to clear his bank account, crossed out the date and replaced it with "1/15/2011," and initialed the change. Lafoca then mailed the check to Run Racing in mid-January 2011. The check was actually posted to his bank account on February 8, 2011. *Id.*

Lafoca testified that he purchased a trailer for $3,000 on October 25, 2011, for the purpose of selling and distributing photographs at events. He testified that the trailer was used exclusively for business and that he used the trailer in multiple states and at numerous events. The trailer housed a number of computers and printers and had a concession window that enabled customers to order and go home with a souvenir photo immediately after their events. Plaintiffs provided Defendant with a list of "equipment purchased" showing a payment on the trailer was made in the amount of $750 on October 22, 2011 (Def's Ex F at 256), an email acknowledging a payment plan for $1,500 deposit with the final balance paid over nine months (Def's Ex F at 275), and a copy of a check in the amount of $750 payable to Gary Campbell with the memo "trailer payment 3000 sp." (Def's Ex F at 276.)

Lafoca testified that KTLA provided him with a cell phone which he used for the employer's business and for his own personal use. He testified that he purchased a second cell

phone on April 5, 2011, for $329 from Verizon Wireless, and used it exclusively for his photography business. He advertised his services using that cell phone number.

Lafoca testified that in 2011, he purchased a computer at Fry's for $721 and used it exclusively in the trailer in his photography business. He used a number of computers in his work trailer because he needed significant computing power. He testified that by using this computer setup the business was able to have photographs available to customers in as little as 17 seconds.

Lafoca testified that Plaintiffs' home is located in southern Oregon and that he rented a single, one bathroom guesthouse in Mission Hills, California, from Service Specialties for $800 per month. He testified that he used the space to work on administrative tasks for his photography business and slept on a six-foot tall bunk above his working area. Lafoca testified that the guesthouse consisted of 270 square feet, with 106 square feet used for personal living space and 164 square feet (60 percent) used for business. On Plaintiffs' 2011 tax return, Lafoca claimed an expense of $6,800 for rent. (Def's Ex C at 4.) Defendant denied deductions for payments made to Service Specialties for rent. (Def's Ex D at 2.) During the audit Lafoca provided a spreadsheet to Defendant indicating he paid Service Specialties $7,600 in rent in 2011. (Def's Ex F at 269.)

Lafoca testified he paid Janet Saunderson $1,471 in 2011, for "image tagging" services for which she matched event participant bib numbers with their photographs to assist in the sales process. Lafoca presented an invoice in the amount of $257.03 noting that it was paid with "ck 5187" (Ptfs' Ex 4 at 1), an invoice in the amount of $305.20 noting that it was paid with "ck 5181" on December 3, 2011 (Ptfs' Ex 4 at 2), and check #5187 in the amount of $257.03 with the date as "12/16/2001." *(Ptfs' Ex 4 at 3.)* Lafoca testified that the invoices bear the date

August 23, 2015, because that is the date he printed them, and that the date does not reflect when he actually received the invoices. Lafoca testified that the date on the check, indicating the year 2001, appears to have been an error.

Lafoca testified that he deducted $2,291 for payments made to Verizon Wireless consisting of $1,921 in cell phone bills and $370 for mobile Wi-Fi services, which resulted from a failed experiment to have participants photographs posted online. Lafoca testified that the phone service was for the cell phone he purchased in April 2011, which was used exclusively for his photography business. He also testified that he deducted $50 for his home wifi use.

Lafoca testified that in 2011, he made a number of business trips out of town. He testified that he sometimes paid for lodging and meals but he did not keep receipts. In Plaintiffs' response to Defendant's audit, they asserted $4,714 in travel expenses "to and from Oregon." (Def's Ex A at 3.) Lafoca testified that he maintained a dedicated business space in his home in Oregon and claimed expenses going to and from his business location in Los Angeles to Oregon as business expenses.

Lafoca claimed as unreimbursed employee expenses $12,188 for mileage and $20,120, for expense other than meals and entertainment in miscellaneous itemized Schedule A deductions. (Def's Ex C at 13.) Lafoca testified that the mileage represented travel to and from areas where he shot the news. He testified that he kept a mileage log, but did not submit the log to the court.

Lafoca claimed a total of $20,120 in other business expenses, not including meals and entertainment. (Def's Ex C at 13, 16.) The specific amounts are as follows:

| | |
|---|---|
| Continuing Education/Conferences | $725 |
| Depreciation/Amortization | $696 |
| "Missed Meal Penalties" | $16,779 |
| Prof Dues | $165 |

| Prof Subsc | $110 |
| Supplies | $222 |
| Telephone | $603 |
| Union Dues | $820[2] |

The major portion of the deductions at issue in this case involves what Plaintiffs call "missed meal penalties." Lafoca testified that work as a television cameraman often involves long hours on location where he would be unable to take regularly scheduled meal breaks. The union contract under which Lafoca works provides, in part:

> "If an employee is required to take a meal period outside of the time frames set forth above or misses one or more of the meal periods to which the employee is entitled, such employee shall be paid a seventy-five dollar ($75.00) penalty for each meal period delayed or missed, with no other penalty."

(Def's Ex G at 44.) Payments made to Lafoca under this "meal penalty" were included as income by his employer.

## II. ANALYSIS

In analyzing Oregon income tax cases, the court starts with several general guidelines. First, the court is guided by the intent of the legislature to make Oregon's personal income tax law identical in effect to the federal Internal Revenue Code (IRC) for the purpose of determining taxable income of individuals. ORS 316.007.[3] Second, in cases before the court, the party seeking affirmative relief bears the burden of proof and must establish his or her case by a "preponderance" of the evidence. ORS 305.427. Third, allowable deductions from taxable income are a "matter of legislative grace" and the burden of proof (substantiation) is placed on the individual claiming the deduction. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992).

---

[2] Palmer stipulated that Union Dues had been accepted during the audit but the cumulative total of expenses did not exceed the threshold of 2 percent of adjusted gross income. See Def's Ex. D at 6.

[3] The court's references to the Oregon Revised Statutes (ORS) are to the 2009 version.

IRC section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" "To be 'necessary[,]' an expense must be 'appropriate and helpful' to the taxpayer's business. * * * To be 'ordinary[,]' the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved." *Boyd v. Comm'r*, 83 TCM (CCH) 1253 (2001), 2001 WL 236685 at *2 (US Tax Ct) (internal citations omitted). IRC section 262 generally disallows deductions for "personal, living, or family expenses" not otherwise expressly allowed under the IRC.

Taxpayers must be prepared to produce "any books, papers, records or memoranda bearing upon [any] matter required to be included in the return[.]" ORS 314.425(1); *see also Gapikia v. Comm'r*, 81 TCM (CCH) 1488 (2001), 2001 WL 332038 at *2 (US Tax Ct). Generally, if a claimed business expense is deductible, but the taxpayer is unable to substantiate it fully, the court is permitted to make an approximation of an allowable amount. *Cohan v. Comm'r*, 39 F2d 540, 543-44 (2nd Cir 1930). The estimate must have a reasonable evidentiary basis. *Vanicek v. Comm'r*, 85 TC 731, 743 (1985). IRC section 274(d) supersedes the *Cohan* rule and imposes more stringent substantiation requirements for travel, meals, entertainment, gifts, and listed property under IRC section 280F(d)(4)(A)(i). Treas Reg § 1.274-5T(a).

Lafoca testified that while he is a skilled cameraman and photographer his business record keeping and accounting skills are poor. He testified that he tried a number of accounting methods and systems with unsatisfactory results. While Lafoca's testimony about his business expenses appeared quite sincere, his lack of organized recordkeeping, his candid admission that he lacked personal knowledge of how his taxes were prepared, along with his failure to follow

/ / /

court rules resulting in the exclusion of most of his documentary evidence, served as a significant impediment to his appeal.

A.      *Commissions and Fees*

Lafoca deducted $8,000 for a payment which he contends was made in 2011. Defendant challenges deductibility of that payment because the check was originally written in 2010. Under the cash accounting method, a check is deemed paid "on the date the taxpayer mails the check." Rev Proc 92-71. Although the date originally printed on the check was 2010, Lafoca's testimony that he manually changed the date to 2011 and mailed it in that year is supported by documentary evidence. The court is persuaded that Lafoca mailed the check to the vendor in 2011. Thus, Plaintiffs are entitled to the business expense, for the 2011 tax year, in the amount of $8,000.

B.      *Depreciation*

Plaintiffs argue that they should be entitled to depreciate a trailer purchased for $3,000 and used exclusively for business in the 2011 tax year. At trial, Lafoca seemed to concede to Defendant's argument that at most he could depreciate was $750 because he was unable to provide evidence of full payment in 2011. However, depreciation is based on the basis of the property not necessarily the amount paid during the tax year. IRC §§ 167, 1012. Lafoca provided sufficient evidence of a legally binding agreement to purchase the trailer for $3,000, in 2011, and that is the amount the court finds is the basis for the item. Plaintiffs are entitled to a depreciation expense for the trailer.[4]

/ / /

---

[4] Neither party presented a depreciation schedule. Thus, the court is unable to determine the method or the amount which could be depreciated for this item in the tax year in issue. Plaintiffs should submit a proposed depreciation schedule for the trailer to Defendant.

C.    *Cell Phone and Computer*

Lafoca had two cell phones – one from his employer that he used for work and for personal use and a second phone exclusively for his photography business. The court is persuaded that the second cell phone was an ordinary and necessary expense and was used exclusively for his business. Thus, the cell phone expense in the sum of $329 is allowed. Similarly, the court is persuaded that the computer placed in the trailer and used exclusively at photography events was an ordinary and necessary expense for his business. Thus, the computer expense in the sum of $721 is allowed.

D.    *Photo Digital Processing*

Plaintiffs initially challenged Defendant's denial of deductions for photo digital processing. Lafoca conceded this deduction at trial.

E.    *Rent or Lease*

In general taxpayers are not entitled to deduct use of their dwelling as a business expense. IRC 280A(a). An exception to the general rule is found in IRC 280A(c)(1)(A) for a home office that is exclusively used as "the principal place of business for any trade or business of the taxpayer[.]" Under the Code "principal place of business" includes "a place of business which is used by the taxpayer for the administrative or management activities of any trade or business of the taxpayer if there is no other fixed location of such trade or business where the taxpayer conducts substantial administrative or management activities of such trade or business." IRC 280A(c)(1)(C).

Plaintiffs' photography business was performed on location. The court finds that Lafoca used the rental for the administrative and management activities of his photography business and that there was no other fixed location for such activities. The court accepts Lafoca's testimony

on the percentage of business use for his rented house at 60 percent. To the extent his generalized testimony about the amount paid in rent ($800 x 12) is inconsistent with the spreadsheet he provided to Defendant, the court finds the spreadsheet is more specific and reliable and deems $4,560 deductible as rent.[5]

F.    *Image Tagging*

As discussed in section A above, the parties' dispute over this deduction appears to be the date of payment. Dates noted on invoices and checks submitted at trial did not match. With the number of errors associated with this expense, the court is only persuaded that $257.03 was paid to Ms. Saunderson during the 2011 year. Therefore, only that amount is allowed as a business expense for image tagging.

G.    *Utilities*

Plaintiffs deducted $2,291 for payments made to Verizon Wireless consisting of $1,921 in cell phone bills and $370 for mobile Wi-Fi services, which resulted from a failed experiment to have participants photographs posted online. As analyzed in section "C" above, phones and Wi-Fi used exclusively for business purposes should be allowed as expenses for the photography business. Plaintiffs have not demonstrated their home Wifi was for a strickly business purpose and thus that expense is not allowed.

H.    *Out of Town Travel*

A taxpayer may deduct "traveling expenses * * * while away from home in the pursuit of a trade or business[.]" IRC § 162(a)(2). "The purpose of IRC section 162(a)(2) is to ameliorate the effects of business which requires taxpayers to duplicate personal living expenses." *Harding v. Dept. of Rev.*, 13 OTR 454, 458 (1996). "Consequently, courts must determine whether the

---

[5] $7,600 in total rent per Plaintiffs' spreadsheet at 60 percent.

claimed expense is actually required by the business rather than by the taxpayer's personal choice." *Id.* To deduct travel expenses under IRC section 162(a)(2), taxpayers must show that the expenses "(1) were incurred in connection with a trade or business; (2) were incurred while away from home; and (3) were reasonable and necessary." *Morey v. Dept. of Rev.*, 18 OTR 76, 80-81 (2004) (citation omitted). For a taxpayer to be considered "away from home" within the meaning of IRC section 162(a)(2), the taxpayer must be on a trip requiring sleep or rest. *U.S. v. Correll*, 389 US 299, 302-03, 88 S Ct 445, 19 L Ed 2d 537 (1967).

The question for this claimed deduction is whether Lafoca was "away from home" for purposes of IRC section 162(a)(2). Plaintiffs contend that Lafoca went from his southern California location back to Oregon going from one business location to another. However, there does not appear to be any business purpose for the travel other than Lafoca's personal decision to go "home" to Oregon and be with his family. This personal decision, while understandable, does not render it a business expense. This deduction is not allowed due to a lack of substantiation.

I.      *Unreimbursed Employee Expense*

Plaintiffs challenge the denial of $30,047 in miscellaneous itemized Schedule A deductions consisting of unreimbursed employee vehicle expenses and other business expenses. Lafoca claimed as unreimbursed employee expenses $12,188 for mileage and $20,120 for expense other than meals and entertainment.

1. *Vehicle expense*

As mentioned above, certain expenses are subject to strict substantiation rules under IRC section 274(d). Such expenses include those relating to travel. To comply with the strict substantiation rules, the taxpayer must have adequate records or sufficient evidence corroborating the amount of the expense, the time and the place the expense was incurred, the

business purpose of the expense, and the business relationship of the taxpayer to any others benefited by the expense. *Id.* Accompanying regulations clarify the adequate records requirement: "[A] taxpayer shall maintain an account book, diary, log, statement of expense, trip sheets, or similar record, * * * and documentary evidence * * * which, in combination, are sufficient to establish each element of an expenditure or use * * *." Treas Reg §1.274-5T (c)(2).

Lafoca testified that the mileage expense represented travel to and from areas where he shot the news for his employer. He testified that he kept a mileage log, but did not submit the log to the court. Without adequate records of the mileage claimed, the deduction for vehicle miles must be denied.

2. *Other business expenses*

Lafoca testified that he attended a convention called "imaging USA" in San Antonio to keep up to date on technological changes in his industry. No documents were presented to support Plaintiffs' continuing education or conferences. Therefore, his continuing education/conference expenses are not allowed. Similarly, Plaintiffs offered no documents or had no information to support deductions for Depreciation/Amortization, professional dues, professional subscriptions, supplies, or telephone (not including cell phone related deductions). Thus, those deductions are also denied.

3. *"Missed meal penalties"*

Lafoca argues that "missed meal penalties" should be deductible because in a previous audit by the Oregon Department of Revenue Plaintiffs were allowed to deduct 50 percent of those amounts. However, a compromise in an audit of a prior year is not relevant or binding on the court – there could be many reasons for the Department to compromise on adjustments made. The court gave Lafoca additional time after trial to provide a persuasive authority for his

position. Lafoca offered portions of Rev Proc 2011-47, 2011-42 IRB 520, which provides a method for deducting for meal expenses using a per diem method and dispensing with the evidence generally required under IRC section 274. As the court understands Lafoca's argument, the "meal penalty" is actually a nonaccountable employee benefit plan. Under such a plan, payments by the employer are reported as wages on the employee's Form W-2 and then the employee must claim and substantiate deductibility of any expenses. Treas Reg 1.62-2(c). While it is possible that the intent of the union contract was to create a nonaccountable employee benefit plan, the evidence presented on that issue is not persuasive. There is no requirement under the union contract that the employee is traveling away from home or that they actually incur any expense at all. The "meal penalty" applies even when a meal period is delayed and not missed. The court is not persuaded that the union contract constitutes a nonaccountable employee benefit plan. Rather, it appears to be an agreement for additional compensation to employees in exchange for waiving rights they might otherwise have under state and federal labor laws.

Further, even if the "meal penalty" was held to be a nonaccountable employee plan, Plaintiffs presented only per diem estimates to substantiate the amounts claimed as a deduction. The U.S. Tax Court in *Thunstedt v. Comm'r* explained the law this way:

> "Taxpayers are [ ] allowed to deduct traveling expenses 'while away from home in the pursuit of a trade or business.' The term 'away from home' is not defined in the Code. Accordingly, the IRS adopted the 'sleep or rest rule,' which was first articulated by the Court of Appeals for the Fifth Circuit in *Williams v. Patterson,* 286 F.2d 333, 340 (5th Cir.1961).
>
> > " 'If the nature of the taxpayer's employment is such that when away from home, during released time, it is reasonable for him to need and to obtain sleep or rest in order to meet the exigencies of his employment or the business demands of his employment, his expenditures (including incidental expenses, such as tips) for the

purpose of obtaining sleep or rest are deductible traveling expenses under Section 162(a)(2).'

"* * * Although traveling expenses may be deducted under section 162, they are subject to the strict substantiation requirements of section 274(d)(1). Pursuant to section 1.274–5(g), Income Tax Regs., the Commissioner may prescribe alternative methods of substantiating certain expenses, including per diem allowances. Accordingly, the IRS provides an optional method by which, in certain circumstances, employees and self-employed individuals who pay or incur business-related meal and incidental expenses may use an amount computed at the Federal meals and incidental expenses rate for the locality of travel for each calendar day that the individual is away from home. These expenses are deemed substantiated for purposes of section 274(d) if the individual can substantiate the time, place, and business purpose of the travel in accordance with the regulations. Again, substantiation must occur through the use of sufficient evidence to corroborate the taxpayer's statements or adequate records and to substantiate by adequate records, the taxpayer must maintain an account book, a log, a diary, or a similar record and documentary evidence to establish each element of an expenditure."

106 TCM (CCH) 658 (2013), 2013 WL 6508977 at *5-6 (US Tax Ct).

It is the taxpayers' burden to show eligibility for the deduction and prove the amount by a preponderance of the evidence. Here, Plaintiffs have not made that showing.

### III. CONCLUSION

After careful review of the testimony and evidence, the court concludes that Plaintiffs have substantiated some of their claimed business expenses. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal of photo digital processing, out of town travel, and unreimbursed employee expenses are denied.

IT IS FURTHER DECIDED that Plaintiffs are allowed the following expenses: $8,000 for commissions and fees; $329 for cell phone; $721 for a laptop computer; $4,560 for rent; $257.03 for image tagging; and $2,291 for utilities.

/ / /

/ / /

IT IS FURTHER DECIDED that Plaintiffs are allowed depreciation for a trailer, purchased in 2011 for $3,000. The parties must work out the exact amount which may be depreciated in the 2011 tax year.

Dated this ____ day of May 2017.


_____
RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on May 9, 2017.*