127 T.C. No. 10


UNITED STATES TAX COURT


MARC G. BISSONNETTE AND LILLIAN I. CONE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5988-05.                    Filed October 23, 2006.


     P was a ferryboat captain for a company that
carried travelers on sea voyages to destinations on
Puget Sound, Washington.  The company's home port was
in Seattle, Washington.  P worked approximately 15- to
17-hour days on turnaround runs completed within 24
hours that each included a 6-hour layover at an away-
from-home port during off-season voyages and a 1/2- to
1-hour layover at an away from home port during peak-
season voyages.  P paid for his meals and incidental
expenses (M&IE) while traveling.

     P reported his M&IE incurred during these layovers
as miscellaneous itemized deductions under sec.
162(a)(2), I.R.C., for 2001, 2002, and 2003.  The
deduction amounts were ascertained from the Federal per
diem rates for M&IE as prescribed under Rev. Proc.
2000-39, 2000-2 C.B. 340, and its successors.

R denied the deductions, determining that P was not "away from home" within the meaning under sec. 162(a)(2), I.R.C., because his voyages did not require him to obtain sleep or rest.  Additionally, R argues that if P is considered "away from home" and is entitled to deduct his M&IE, P was required to prorate and reduce those expenses for a partial day of travel away from home and was required to further reduce these expenses by 50 percent pursuant to sec. 274(n), I.R.C.

Held:  Petitioner was "away from home" for purposes under sec. 162(a)(2), I.R.C., and may deduct M&IE incurred while obtaining sleep or rest during the 6-hour layovers.

Held, further, P may deduct the allowable Federal M&IE rate for a full day of travel.

Held, further, P is required to reduce his allowable M&IE by 50 percent pursuant to sec. 274(n), I.R.C.


Gregory L. White, for petitioners.

Lisa M. Oshiro, for respondent.


HAINES, Judge:  Respondent determined deficiencies in petitioners' Federal income taxes for 2001, 2002, and 2003 (years at issue) of $3,011, $3,119, and 3,250, respectively.[1]

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and Rule references are to the Tax Court Rules of Practice and Procedure.  Amounts are rounded to the nearest dollar.

After concessions,[2] the issues for decision are: (1) Whether Marc G. Bissonnette (petitioner) was "away from home" within the meaning of section 162(a)(2) by virtue of his duties as a passenger ferryboat captain on turnaround voyages completed within 24 hours; (2) if petitioner was "away from home", whether he is required to prorate and reduce his allowable meals and incidental expenses (M&IE) for a partial day of travel away from home; and (3) if petitioner was "away from home", whether he is required to further reduce his allowable M&IE by 50 percent pursuant to section 274(n).

FINDINGS OF FACT

A.    Petitioner's Education and Employment

The parties' stipulation of facts and the attached exhibits are incorporated herein by this reference, and the facts

---

[2] The parties filed a stipulation of settled issues in which they agreed to the amounts of deductions that petitioners are entitled to claim for spouse union dues for the years at issue, tax preparation fees in 2002 and 2003, spouse continuing education expenses in 2002, and license fees in 2001.

The parties also stipulated that if the Court determines petitioner was away from home during either the Victoria layovers or the Friday Harbor layovers, or both: (1) Petitioner has substantiated the time, place, and business purpose of the travel; (2) petitioner may use the Federal M&IE rate for the locality of travel for each day or partial day that he was away from home; (3) petitioner incurred telephone expenses of $300, $260, and $300 for the years at issue, respectively; and (4) petitioner incurred taxi expenses while in Victoria during the years at issue of $199, $93, and $326, respectively. Petitioner concedes that his miscellaneous itemized deductions for the years at issue are limited to amounts which exceed 2 percent of his adjusted gross income under sec. 67(a).

stipulated are so found.  At the time the petition was filed, petitioners resided in Kingston, Washington.  Kingston is a community on the Kitsap Peninsula, Washington, on Puget Sound.

After petitioner graduated from high school in 1976, he was nominated to attend the Merchant Marine Academy by Senator Claiborne Pell.  Petitioner graduated from the Academy in 1980 with a bachelor of science degree.  For the next 4 to 5 years, petitioner operated deep sea vessels.  He then returned to school to earn a master's degree in marine transportation at the University of Rhode Island in 1985.  Petitioner has two oceans licenses.  One permits him to be master of a ship up to 1,600 tons, the other to be a third mate on a ship without limitations as to the ship's tonnage.

During the years at issue, petitioner was employed as the director of marine operations and senior captain for Clipper Navigation, Inc. (the company).  The company owned and operated ferryboats that carried travelers on sea voyages throughout Puget Sound.  The company's main office, terminal, and home port are in Seattle, Washington.

The company paid petitioner an hourly rate.  His duties included captaining the ferryboats named Victoria Clipper (Clipper), Victoria Clipper III (Clipper III), and the Lewis and Clark to Victoria, B.C., Canada (Victoria), and/or Friday Harbor, Washington, in the San Juan Islands (Friday Harbor).  On all

voyages, each ferryboat was maintained by a crew and a first mate.[3] Each ferryboat carried up to 1,200 passengers, and as captain petitioner was responsible for the safety of all passengers. This responsibility required his full attention at all times. Any trouble or incident on the ferryboat during a voyage was his responsibility.

The voyages petitioner captained began and ended within the same 24-hour period at the company's home port in Seattle, Washington. He generally worked 15 to 17 hours a day for 7 consecutive days with the following 7 consecutive days off. He typically began work as early as 5 a.m. to 6 a.m. to prepare the ferryboat and was released from duty between 8 p.m. to 10 p.m. and occasionally as late as midnight.

The time fluctuations were a result of changes in the company's schedule and a variety of other unpredictable factors, including U.S. Customs and Border Protection security checks, high sea levels, poor weather, maintenance problems, log tows, fueling, interference by recreational boats, minimum wake requests, and assisting with rescues or medical emergencies. For example, if weather conditions were severe, petitioner would need to take an alternative route which could extend travel time by approximately 2-1/2 hours.

---

[3] The first mate could operate the ferryboat only while in the captain's presence.

At the end of a workday, petitioner usually did not have time to return to his personal residence for dinner. On account of his early starting time and long commute to and from his residence, he remained in Seattle and slept on a cot stored aboard one of the company's vessels. The company did not require him to stay overnight, pay him during this time, nor provide him an allowance for meals or incidental expenses. Regardless, during overnight periods he helped out with maintenance problems and kept watch for bad weather. On one occasion, severe weather forced petitioner to move a ferryboat in the middle of the night. Usually half of the captains employed by the company stay overnight on the ferryboats.[4]

The company's voyages during the year are classified as occurring during either peak travel season or off-peak travel season.

B.   Peak Travel Season

In the years at issue, the peak travel seasons began May 19, 2001, June 8, 2002, and June 7, 2003, and each generally lasted though September 9 of the year in which it began. Petitioner ordinarily captained the Clipper III in 2001 and 2002 on a schedule servicing both Friday Harbor and Victoria on the same day. Because the company leased the Clipper III to the United

_____

[4] Petitioner does not claim he was away from home when he stayed overnight in Seattle on one of the company's ferryboats.

States Navy in 2003, petitioner captained its replacement, the Lewis and Clark.  The Lewis and Clark was smaller and slower than the Clipper III.  As a result, the company altered the peak-season schedule to limit the voyages to Friday Harbor and discontinued the Friday Harbor to Victoria leg of the voyage for the entire season.  Occasionally, petitioner captained another ferryboat because of a shift trade with another captain or to cover for an ill captain.[5]

The ferryboats petitioner captained during the peak-seasons for the years at issue generally followed the schedules below:

| Departure/arrival | 2001 | 2002 | 2003 |
|---|---|---|---|
| Depart Seattle[1] | 7:30 a.m. | 7:45 a.m. | 7:45 a.m. |
| Arrive Friday Harbor | 10:30 a.m. | 11:15 a.m. | 11:15 a.m. |
| Depart Friday Harbor | 11:00 a.m. | 11:45 a.m. | --- |
| Arrive Victoria | 12:45 p.m. | 1:30 p.m. | --- |
| Depart Victoria | 1:45 p.m. | 2:00 p.m. | --- |
| Arrive Friday Harbor | 3:30 p.m. | 3:45 p.m. | --- |
| Depart Friday Harbor | 4:00 p.m. | 4:15 p.m. | 4:30 p.m. |
| Arrive Seattle[2] | 7:00 p.m. | 7:15 p.m. | 7:15 p.m. |

[1] Passengers generally start boarding 45 minutes to an hour before departure.
[2] As stated above, the Seattle arrival time could be later because of unpredictable circumstances.

In 2001 and 2002, the Clipper III had a 30-minute-to-1-hour layover in Victoria and Friday Harbor.  In 2003, the Lewis and Clark voyages had a layover in Friday Harbor that lasted over 5 hours.  During all layovers neither petitioner nor the crew were

___

[5] For purposes of this Opinion peak travel season voyages are only the voyages performed with the Clipper III and the Lewis and Clark.

off duty, and during the 5-hour layover petitioner usually fueled the ferryboat and continually moved it to different locations because of harbor congestion.  Because petitioner did not go off duty during these voyages, the company provided a second captain capable of maintaining the ferryboat to allow petitioner time to rest.

Petitioner did not provide receipts to substantiate his M&IE incurred during peak-season layovers or during on-board rest breaks.  Instead, he used the allowable Federal M&IE rate for the locality of travel.[6]

C.  Off-Peak Travel Season

In the years at issue, each off-peak travel season ran from September 9 until the next year's peak-season began.  During each off-peak season petitioner typically captained the Clipper from Seattle to Victoria and back.  The Clipper generally departed Seattle between 7:30 and 8:30 a.m., arrived in Victoria between 10:30 and 11 a.m., departed Victoria between 5 and 6:30 p.m., and

---

[6] The Federal M&IE rate represents the daily amount that the Government pays to its traveling employees to reimburse them for breakfast, lunch, dinner, and incidental expenses.  Johnson v. Commissioner, 115 T.C. 210, 227 (2000).

The term "locality of travel" means the locality where an employee traveling away from home in connection with the performance of services as an employee of the employer stops for sleep or rest.  Rev. Proc. 2000-39, 2000-2 C.B. 340; Rev. Proc. 2001-47, 2001-2 C.B. 332; Rev. Proc. 2002-63, 2002-2 C.B. 691; Rev. Proc. 2003-80, 2003-2 C.B. 1037.

arrived back in Seattle between 8:30 p.m. and 9:30 p.m. During the 6- to 7-hour layover the passengers would explore the city of Victoria.

The company provided a four-bedroom condominium in Victoria where the Clipper's crew rested during the layover. Because most of the crew were young and noisy, petitioner did not go to the condominium. Instead, he had lunch, swam for 30 minutes, and returned to the Clipper to sleep or rest for approximately 4 hours on a cot he stored on board. If the sleeping accommodations on the ferryboat had not been available, petitioner would have rented a room at a hotel.

Petitioner was neither paid an hourly wage for the layover period in Victoria nor reimbursed for M&IE he incurred during these layovers. Petitioner did not provide receipts to substantiate his M&IE. Instead, he used the allowable Federal M&IE rate for the locality of travel.

D.   Procedural Background

Petitioners timely filed their Federal income tax returns for the years at issue. Respondent issued the notice of deficiency in dispute on January 20, 2005. Petitioners timely filed their petition on March 29, 2005.

Petitioners' gross income for the years at issue is not in dispute. The parties dispute whether petitioners may deduct under section 162(a)(2) traveling expenses listed on their

Schedules A, Itemized Deductions, for the years at issue and, if any of the expenses are deductible, whether petitioners must reduce the deductible amounts pursuant to the "partial day" rule and section 274(n).

## OPINION

Petitioner argues his M&IE are deductible because they were incurred while he was traveling away from home on business trips requiring sleep or rest.[7]

Section 262 provides that a taxpayer generally cannot deduct personal, living, or family expenses. However, section 162(a)(2) allows taxpayers to deduct traveling expenses paid or incurred while away from home in the pursuit of a trade or business. Traveling expenses include travel fares, meals, lodging, and other expenses incident to travel. Sec. 1.162-2, Income Tax Regs. For purposes of section 162, the term "home" generally means the taxpayer's principal place of employment and not where his or her personal residence is located. Mitchell v. Commissioner, 74 T.C. 578, 581 (1980).

---

[7] We decide the issues in this case, including whether petitioner was "away from home" for purposes of sec. 162(a), on the basis of the evidence in the record without regard to the burden of proof. Accordingly, we need not and do not decide whether the burden-shifting rule of sec. 7491(a)(1) applies. See Higbee v. Commissioner, 116 T.C. 438 (2001).

A.   <u>Section 162(a)(2) Sleep or Rest Rule</u>

The standard used to determine whether a taxpayer is "away from home" was developed through a series of cases including <u>Williams v. Patterson</u>, 286 F.2d 333, 340 (5th Cir. 1961).  As stated in <u>Williams</u>, as applied to a traveler whose work does not require him to be "away from home" overnight, the standard is:

> If the nature of the taxpayer's employment is such that when away from home, during released time, it is reasonable for him to need and to obtain sleep or rest in order to meet the exigencies of his employment or the business demands of his employment, his expenditures (including incidental expenses, such as tips) for the purpose of obtaining sleep or rest are deductible traveling expenses under Section 162(a)(2) * * * .  [<u>Id.</u>]

This standard is commonly referred to as the "sleep or rest rule".

The facts of <u>Williams</u> assist in understanding the sleep or rest rule articulated above.  In <u>Williams</u>, the taxpayer, a railroad engineer, worked a 16-hour day every other day.  On a turnaround run between Montgomery, Alabama, his home terminal, and Atlanta, Georgia, he had a 6-hour layover in Atlanta before his return to Montgomery the same day.  Although the taxpayer was not required by his employer to do so, during the layover period he felt it was necessary to sleep and rest and rented a hotel room.  At the hotel he had lunch and dinner as well as rested and slept before resuming work.

The Court of Appeals for the Fifth Circuit concluded that on account of the length of the taxpayer's workday (16 hours),[8] the duration of his layover (6 hours), and the responsibility of his position, it was necessary for the taxpayer to rest during his layover in order to carry out his assignment, even though no statute, regulation, or railroad rule required him to sleep or rest before his return trip.  Id. at 337, 339.  Furthermore, the court reasoned that the phrase "away from home" does not require a person to actually be away overnight.  The court held that the costs of meals, lodging, and tips during the 6-hour layover were deductible.  Id. at 335, 340.

Shortly after Williams was decided, the Commissioner issued Rev. Rul. 61-221, 1961-2 C.B. 34, which announced his concurrence with the sleep or rest rule as interpreted in Williams.[9]  The

---

[8] Although the length of a workday is considered in determining whether a taxpayer actually needed sleep or rest, the "Revenue Act does not necessarily require as a prerequisite to a deduction for traveling expenses on less than an overnight trip that the employee work substantially longer than an ordinary workday".  Williams v. Patterson, 286 F.2d 333, 339 (5th Cir. 1961).

[9] The pertinent part of Rev. Rul. 61-221, 1961-2 C.B. 34, states:
> The Internal Revenue Service will follow the recent decision of the United States Court of Appeals for the Fifth Circuit in F. M. Williams v. George D. Patterson, 286 Fed. (2d) 333 (1961).
>
> *     *     *     *     *     *     *
>
> The Service had contended that the taxpayer was not away from home on such trips because they were not

(continued...)

---

[9](...continued)
"overnight" trips, as that term is explained in Revenue Ruling 54-497, C.B. 1954-2, 75, at 78-79, for the reason that Williams' trips did not necessitate his absence from his home terminal for a minimum period which lasted substantially longer than an ordinary days' work and during which his duties required him to obtain necessary sleep in Atlanta.

The court concluded, however, that Williams had satisfied the dual test prescribed by the Service since his 16-hour absence on such round trips (including one hour for discharging his duties before leaving, and after returning to, his home terminal) was substantially longer than an ordinary workday, and it was reasonably necessary for Williams to sleep during his layover in order to carry out his assignment, even though there was no statute, regulation or railroad order requiring him to sleep and rest prior to his return run.

The Service agrees with the court in interpreting Revenue Ruling 54-497 as allowing the deduction in this case and concurs in general with the court's understanding that the "correct rule" governing the deductibility of such expenses is as follows:

> If the nature of the taxpayer's employment is such that when away from home, during released time, it is reasonable for him to need and to obtain sleep or rest in order to meet the exigencies of his employment or business demands of his employment, his expenditures (including incidental expenses, such as tips) for the purpose of obtaining sleep or rest are deductible traveling expenses under section 162(a)(2) of the 1954 Code.

However, the Service does not consider the brief interval during which an employee may be released from duty for the purpose of eating rather than sleeping as constituting an adequate rest period to satisfy the "overnight" rule as a test for the deductibility of meal expenses on business trips completed within one day. * * *

Supreme Court in <u>United States v. Correll</u>, 389 U.S. 299 (1967),
observed that the rule contemplated a sleep or rest period of
sufficient duration that would ordinarily be related to a
significant increase in expenses.  The Supreme Court acknowledged
the rule provided a definite, fair, and ascertainable standard.
<u>Id.</u> at 302-303.

The Tax Court in <u>Barry v. Commissioner</u>, 54 T.C. 1210 (1970),
affd. 435 F.2d 1290 (1st Cir. 1970), indicated that the rest
period contemplated by the sleep or rest rule is of the type
illustrated by <u>Williams</u> and normally involves a rest of
sufficient duration to cause an increase in expenses.  A brief
rest period which "anyone can, at any time, without special
arrangement and without special expense, take in his own
automobile or office" does not qualify.  <u>Id.</u> at 1213.  The Court
in <u>Barry</u> disallowed expenses for meals claimed by a taxpayer on
1-day business trips that lasted between 16 and 19 hours during
which the taxpayer rested briefly once or twice in his
automobile.

If the nature of petitioner's employment was such that when
away from home, during released time, it was reasonable for him
to need and to obtain sleep or rest in order to meet the
exigencies or business demands of his employment, his expenses
for this purpose would be traveling expenses under section
162(a)(2).  See <u>Williams v. Patterson</u>, <u>supra</u> at 340; Rev. Rul.

75-170, 1975-1 C.B. 60.  However, the released time must be of a sufficient duration that it would ordinarily be related to a significant increase in expenses.  See <u>United States v. Correll</u>, <u>supra</u>.

B.   <u>Peak Travel Season</u>

Respondent argues that petitioners are not entitled to a deduction for the expenses incurred in the brief layovers during peak travel season because the layovers were insufficient in duration to require sleep or rest.  In 2001 and 2002, during peak-season, petitioner's layovers in Victoria and Friday Harbor never exceeded an hour, and he did not produce evidence showing he rested during that time.  Petitioner also did not show he rested during the 5-hour layover in Friday Harbor during peak-season in 2003.  Instead, petitioner testified that during this layover he was operating the ferryboat.  Even though petitioner testified he did sleep or rest while another captain took command of the ferryboat, he did not produce evidence showing the rest period was part of a layover (released time) or was of sufficient duration that it caused him to incur a significant increase in expenses.

As to the peak-season runs, petitioner's case is indistinguishable from <u>Barry v. Commissioner</u>, <u>supra</u>.  Therefore, the Court finds petitioner was not away from home within the

meaning of section 162(a)(2) during peak-season Victoria/Friday Harbor runs in 2001 and 2002 and the Friday Harbor runs in 2003.

C.    Off-Peak Travel Season

Respondent, citing Stevens v. Commissioner, T.C. Memo. 1985-16, argues that petitioner is not entitled to a deduction for the expenses incurred during the off-peak-season 6- to 7-hour layovers in Victoria because the layovers were solely the result of scheduling rather than petitioner's need for sleep or rest.

However, the proper inquiry is into the nature of petitioner's employment and his need for sleep or rest, not whether a layover was the result of scheduling.  The factors to consider in determining whether petitioner needed sleep or rest include his age, his physical condition, the length of his workday, and the importance of being alert so that he could carry out his job's responsibilities without fear of injury to others. These factors are applied against the background of petitioner's experience in his employment and the practices and customs of similarly situated individuals.  See Williams v. Patterson, 286 F.2d at 339.

Petitioner's background is impressive.  After attending the Merchant Marine Academy, he earned a master's degree in marine transportation, and he has been employed in this field for over 25 years.  In the years at issue, petitioner was the director of marine operations and senior captain for the company.  His

workday lasted on average 15 to 17 hours including a 6- to 7-hour layover in Victoria during off-peak season.  He was responsible for his crew and the safety of up to 1,200 passengers during all voyages.  Because of possible extreme weather conditions, high sea levels, log tows, and other obstacles in the ocean, petitioner as captain had to give his full attention at all times, and any trouble or incident on the ferryboat was his responsibility.  Petitioner also needed to consider that his workday could be significantly lengthened on account of any of the above situations.  As a result, petitioner's job was very demanding.

Considering the facts, this Court finds it was reasonable for petitioner to obtain sleep or rest in order to meet the exigencies and business demands of his employment.  See Williams v. Patterson, 286 F.2d at 339-340.  Further, the released time of 6 to 7 hours during the Victoria voyage was sufficient in duration that it would normally be related to an increase in expenses.[10]  Accordingly, petitioner was "away from home" for purposes of section 162(a)(2).[11]

_____

[10] Petitioner would have incurred significant out-of-pocket lodging expenses during his layover but for the fact that he was furnished with a place to sleep.  See Johnson v. Commissioner, 115 T.C. at 222; Anderson v. Commissioner, 18 T.C. 649, 652 (1952).

[11] Petitioner must deduct his allowable M&IE as itemized deductions for the years at issue.  See sec. 67; Rev. Proc. 2000-39, sec. 7.06, 2000-2 C.B. at 346; Rev. Proc. 2001-47, sec. 7.06,
(continued...)

D.    M&IE

Respondent argues that if petitioner is found to have been "away from home" under section 162(a), the allowable Federal M&IE rate should be reduced pursuant to the "partial day" rule and further reduced by the 50-percent limitation rule of section 274(n)(1), as prescribed in certain revenue procedures.

Section 274(d) generally disallows a deduction under section 162 for "any traveling expense (including meals and lodging while away from home)" unless the taxpayer complies with certain substantiation requirements.  Sec. 274(d)(1).  The section further provides that regulations may prescribe that some or all of the substantiation requirements do not apply to an expense which does not exceed an amount prescribed by those regulations. Id.

Pursuant to section 1.274-5(g), Income Tax Regs., the Commissioner is authorized to prescribe rules in pronouncements of general applicability under which allowances for certain types of ordinary and necessary expenses for traveling away from home will be regarded as satisfying the substantiation requirements of section 274(d).  Beech Trucking Co. v. Commissioner, 118 T.C. 428, 434 (2002).  Section 1.274-5(j)(1) and (3), Income Tax Regs., provides the Commissioner may establish a method under

_____

[11](...continued)
2001-2 C.B. at 339; Rev. Proc. 2002-63, sec. 7.06, 2002-2 C.B. at 699; Rev. Proc. 2003-80, sec. 7.06, 2003-2 C.B. at 1045.

which a taxpayer may use a specified amount or amounts for M&IE paid or incurred while traveling away from home in lieu of substantiating the actual costs under section 274(d).[12]

For purposes of section 1.274-5(g) and (j)(1) and (3), Income Tax Regs., Rev. Proc. 2000-39, 2000-2 C.B. 340, Rev. Proc. 2001-47, 2001-2 C.B. 332, Rev. Proc. 2002-63, 2002-2 C.B. 691, and Rev. Proc. 2003-80, 2003-2 C.B. 1037 (hereinafter referred to collectively as the revenue procedures),[13] authorize various methods a taxpayer may elect to use, in lieu of substantiating actual expenses, for deemed substantiation of the taxpayer's M&IE incurred while traveling away from home.[14]

---

[12] Par. (j)(3) of sec. 1.274-5, Income Tax Regs., applies to incidental expenses incurred after Sept. 30, 2002. Sec. 4.03 of Rev. Proc. 2000-39, 2000-2 C.B. at 342, and of Rev. Proc. 2001-47, 2001-2 C.B. at 334, provides the method a taxpayer may use in lieu of substantiating the costs for incidental expenses for prior periods.

[13] Rev. Proc. 2000-39, supra, and Rev. Proc. 2001-47, supra, apply for the years at issue 2001 and 2002, respectively. Rev. Proc. 2002-63, supra, and Rev. Proc. 2003-80, supra, apply for the year at issue 2003.

[14] Rev. Proc. 2000-39, supra, is effective for M&IE allowances paid or incurred on or after Oct. 1, 2000. Rev. Proc. 2001-47, supra, superseding Rev. Proc. 2000-39, supra, restates the relevant sections of Rev. Proc. 2000-39, supra. Rev. Proc. 2002-63, supra, superseding Rev. Proc. 2001-47, supra, restates the relevant sections of Rev. Proc. 2001-47, supra, except for modifications discussed in this Opinion. Rev. Proc. 2003-80, supra, superseding Rev. Proc. 2002-63, supra, restates the relevant sections of Rev. Proc. 2002-63, supra, except for modifications discussed in this Opinion.

Section 4.03 of the revenue procedures provides:

In lieu of using actual expenses in computing the amount allowable as a deduction for ordinary and necessary meal and incidental expenses paid or incurred for travel away from home, employees and self-employed individuals who pay or incur meal expenses may use an amount computed at the Federal M&IE rate for the locality of travel for each calendar day (or partial day) the employee or self-employed individual is away from home. Such amount will be deemed substantiated for purposes of paragraphs (b)(2) and (c) of § 1.274-5, provided the employee or self-employed individual substantiates the elements of time, place, and business purpose of the travel for that day (or partial day) in accordance with those regulations. * * *

Respondent concedes petitioner substantiated the time, place, and business purpose of the travel and may use the Federal M&IE rate for the locality of travel for each day or partial day that petitioner was away from home.  However, respondent argues that because petitioner was not away from home for as many as 24 hours in 1 day, only three-fourths of the Federal M&IE rate is allowable as a deduction during the off-peak-season turnaround voyages completed within 24 hours.

Section 6.04 of the revenue procedures states that a full Federal M&IE rate for the locality of travel is available for a full day of travel from 12:01 a.m. to 12 midnight.  To determine the amount of M&IE deemed substantiated under section 4.03 of the revenue procedures for partial days of travel, section 6.04 of

the revenue procedures provides that either of the following methods may be used to prorate the Federal M&IE rate:[15]

(1) The rate may be prorated using the method prescribed by the Federal Travel Regulations. Currently the Federal Travel Regulations allow three-fourths of the applicable Federal M&IE rate for each partial day during which the employee or self-employed individual is traveling away from home in connection with the performance of services as an employee or self-employed individual. The same ratio may be applied to prorate the allowance for incidental expenses described in section 4.05 of this revenue procedure;[16] or

(2) The rate may be prorated using any method that is consistently applied and in accordance with reasonable business practice. For example, if an employee travels away from home from 9 a.m. one day to 5 p.m. the next day, a method of proration that results in an amount equal to two times the Federal M&IE rate will be treated as being in accordance with reasonable business practice (even though only one and a half times the Federal M&IE rate would be allowed under the Federal Travel Regulations).

---

[15] The quotation below is from Rev. Procs. 2002-63 and 2003-80, supra, and differs in minor respects from the comparable provisions of Rev. Procs. 2000-39 and 2001-47, supra.

Pursuant to Rev. Procs. 2002-63 and 2003-80, supra, a taxpayer substantiating his M&IE expenses under sec. 4.03 of those revenue procedures generally is limited to using the method in sec. 6.04(1) of the revenue procedures for proration of the Federal M&IE rate. However, if sec. 4.04 of the revenue procedures applies, then either method under sec. 6.04 of the revenue procedures may be used to determine the amount deemed substantiated for a partial day of travel. Petitioner is substantiating his M&IE under sec. 4.03 of the revenue procedures, and he is employed in the transportation industry as defined under sec. 4.04(4) of the revenue procedures. Therefore, he may use either method.

[16] The last sentence does not appear in Rev. Proc. 2000-39, sec. 6.04(1), 2000-2 C.B. at 345, or in Rev. Proc. 2001-47, sec. 6.04(1), 2001-2 C.B. at 337, and has no effect upon this case.

In particular, the method in section 6.04(2) of the revenue procedures allows the taxpayer to prorate the Federal M&IE rate using any method that is consistently applied and is in accordance with reasonable business practice. In the example, even though both days are partial days, a taxpayer is allowed to use 2 full days of the Federal M&IE rate for travel away from home for 15 hours the first day (9 a.m. to midnight), and 17 hours the second day (midnight until 5 p.m.).

Petitioner consistently applied the full Federal M&IE rate to all off-peak-season voyages requiring him to be away from home for 15 to 17 hours a day. Considering the length of petitioner's workday, allowing petitioner to use the full Federal M&IE rate may be treated as in accordance with reasonable business practice by analogy to the example.

Therefore, the Court finds petitioners may treat as substantiated the full Federal M&IE rate pursuant to section 6.04 of the revenue procedures for the days petitioner incurred expenses while away from home during the off-peak-season voyages to Victoria with 6- to 7-hour layovers.

E. Section 274(n)(1) 50-Percent Limitation

Petitioner argues that respondent is precluded from asserting he must reduce the allowable M&IE deduction by 50 percent as required by section 274(n)(1) because respondent raised it for the first time in his opening brief.

As a general rule, this Court will not consider issues raised for the first time on brief where surprise and prejudice are found to exist. Fox Chevrolet, Inc. v. Commissioner, 76 T.C. 708, 735 (1981). Petitioner was not surprised or prejudiced. The revenue procedures petitioner relied upon, as discussed above, clearly state that section 274(n)(1) reduces the allowable Federal M&IE rate by 50 percent. Furthermore, petitioner raised in his pretrial memorandum and opening brief the issue that "If the taxpayer was 'away from home,' what amount is allowable as a travel deduction?" Accordingly, this Court finds petitioner was not surprised and prejudiced by respondent's posttrial contentions in this regard.

Section 274(n)(1)(A) provides that the amount allowable as a deduction for "any expense for food or beverages" is generally limited to 50-percent of the amount of the expense that would otherwise be allowable. The revenue procedures provide rules for applying the section 274(n)(1) 50-percent limitation to per diem allowances. Under section 6.05(1) of the revenue procedures, a taxpayer who computes the amount of his or her M&IE under section 4.03 of the revenue procedures is required to treat that amount as an expense for food and beverages. The expenses are thus subjected to section 274(n)(1).

Petitioner incurred food or beverage and incidental expenses while traveling away from home for business during the years at issue. Petitioner also computed and substantiated his M&IE under

section 4.03 of the revenue procedures.  Therefore, his M&IE

incurred during the years at issue are subject to the section

274(n)(1) 50-percent limitation.

In the alternative, petitioner argues that if the 50-percent

limitation under section 274(n)(1) applies, he is eligible for an

exception.  Section 274(n)(2) provides that paragraph (1) shall

not apply to any expense if:

> (E) such expense is for food or beverages--
>
>> (i) required by any Federal law to be provided to crew members of a commercial vessel,
>>
>> (ii) provided to crew members of a commercial vessel--
>>
>>> (I) which is operating on the Great Lakes, the Saint Lawrence Seaway, or any inland waterway of the United States, and
>>>
>>> (II) which is of a kind which would be required by Federal law to provide food and beverages to crew members if it were operated at sea,
>
> *       *       *       *       *       *       *
>
> Clauses (i) and (ii) of subparagraph (E) shall not apply to vessels primarily engaged in providing luxury water transportation (determined under the principles of subsection (m)). * * *

The evidence failed to show he qualified for an exception to

the section 274(n)(1) 50-percent limitation.  He did not

demonstrate the company was required by any law to provide food

or beverages to him or that the <u>Clipper</u>, the <u>Clipper III</u>, or the

<u>Lewis and Clark</u> was a vessel of a kind that would have been required by Federal law to provide food and beverages to its crew members if it operated at sea. Therefore, this Court concludes that section 274(n)(1) limits petitioner's deduction of his allowable M&IE to 50 percent.[17]

The Court, in reaching its holding, has considered all arguments made and concludes that any arguments not mentioned above are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.

---

[17] Sec. 274(n)(3) allows a taxpayer to deduct a larger percentage of his or her allowable food and beverage expense if the food and beverages are consumed while away from home by an individual during or incident to the period of duty subject to the hours of service limitations of the Department of Transportation. Petitioner did not provide evidence that the hours of service limitations established by the Department of Transportation apply to his activities as director of marine operations and senior captain for the company.