T.C. Summary Opinion 2016-29

UNITED STATES TAX COURT

CHRISTOPHER MICHAEL HAAG AND CHRISTINE ANN HAAG, Petitioners
v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27956-14S.                          Filed June 22, 2016.

Andrew J. VanSingel and Lawrence C. Letkewicz, for petitioners.

Michael T. Shelton and Elizabeth A. Carlson, for respondent.

SUMMARY OPINION

GUY, Special Trial Judge:  This case was heard pursuant to the provisions
of section 7463 of the Internal Revenue Code in effect when the petition was
filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by

---

[1]Unless otherwise indicated, section references are to the Internal Revenue
(continued...)

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $6,204 in petitioners' Federal income tax for 2012 and an accuracy-related penalty of $1,241 pursuant to section 6662(a). Petitioners, husband and wife during the year in issue, filed a timely petition for redetermination with the Court pursuant to section 6213(a). At the time the petition was filed, petitioners resided in Illinois.

After concessions,[2] the issues remaining for decision are whether petitioners are: (1) entitled to deductions for various unreimbursed employee business expenses in excess of amounts respondent allowed; (2) entitled to deductions for cash and noncash charitable contributions in excess of amounts respondent allowed; and (3) liable for an accuracy-related penalty under section 6662(a).

---

[1](...continued)
Code, as amended and in effect for 2012, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

[2]Respondent concedes that petitioners are entitled to deductions for vehicle expenses of $183, union dues of $2,993, clothing expenses of $239 (subject to the 2% limitation imposed under sec. 67(a)), and noncash charitable contributions of $250.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference.

Petitioners were married in 2006 and were legally separated in 2014.

## I. Petitioners' Employment

Petitioners are both electricians and members of the International Brotherhood of Electrical Workers (IBEW Local 150 or union).

### A. Mr. Haag

In 2012 Mr. Haag worked for several employers on short-term work assignments. In the first half of the year he worked for Aldridge Electric, Inc. (Aldridge), at several station stops on the Chicago Transit Authority (CTA) Green Line. Mr. Haag described his work primarily as "pulling communications cable".

In addition to his work at CTA Green Line stations, Mr. Haag performed work for Aldridge at the University of Illinois in Champaign, Illinois, and in Daytona Beach, Florida. He also worked for approximately one month at Chicagoland Speedway in Joliet, Illinois, for Applied Communications Group.

B. Ms. Haag

Ms. Haag was employed by Aldridge throughout 2012 as a project engineer responsible for a wide range of tasks, including managing project worksites, bidding on projects, and field work. Ms. Haag testified that she did have a permanent office space at Aldridge's headquarters and that she completed her assignments in the field, at home, or in office space that she borrowed from another employee at Aldridge.

II. Petitioners' Expenses

A. Vehicle Expenses

Mr. and Ms. Haag both drove their personal vehicles to and from work. Mr. Haag drove a 2003 Chevrolet Trailblazer, and Ms. Haag drove a 2011 Dodge Journey.

1. Mr. Haag's Vehicle Expenses

Mr. Haag recorded his vehicle mileage in a notebook that he kept in his Trailblazer. He updated the notebook daily or weekly, listing the date, the worksite location, and the number of miles that he drove. He testified that he recorded only the miles that he drove from the county line (petitioners' residence was in Lake County, Illinois) to each worksite and back in accordance with conversations that he had with other union electricians.

Mr. Haag normally was allowed to park at no charge on CTA property near his assigned Green Line worksites. He testified, however, that he paid between $150 and $250 to park at two CTA stations (the Garfield and Roosevelt stations) when free parking was not available.

### 2. Ms. Haag's Vehicle Expenses

Ms. Haag recorded her vehicle mileage in a pocket calendar that she kept in her vehicle. Like Mr. Haag, she worked at several CTA Green Line stations in Chicago, and she recorded the date, the worksite location, and the number of miles she drove from the Lake County line to each worksite and back.

Ms. Haag testified that she paid to park at the Garfield and the Roosevelt CTA Green Line stations while working for Aldridge. Petitioners produced five receipts showing that they paid $89 for parking in 2012.

### B. Work Clothing

In an effort to enhance employee safety, IBEW Local 150 requires its member electricians to wear safety boots, denim jeans, and long-sleeve cotton shirts. Petitioners testified that they normally replace their work boots twice a year and that in 2012 they purchased two pairs of composite-toed boots during a two-for-one sale. They produced a receipt from Rogan's Shoes for work boots totaling $239. Petitioners also testified that they each purchased an insulated

Carhartt bib that included a "built-in" tool belt for $100. Ms. Haag testified that she purchased new work clothing in 2012 because it had been some time since Aldridge had assigned her to perform field work.

C. Tools

IBEW Local 150 requires its member electricians to maintain a basic set of tools including a screwdriver, pliers, meters, and testers. Mr. Haag testified that he often dropped tools onto the CTA Green Line tracks (where they could not be retrieved) as he climbed up and down ladders to perform electrical work. Consequently, he was required to purchase replacement tools about once a month in 2012. Ms. Haag also purchased tools to perform work in the field. Petitioners produced receipts from Home Depot showing that they paid a total of $371 for various tools in 2012.

D. Ms. Haag's Computer

Aldridge provided Ms. Haag with a laptop computer to enable her to test network connections at worksites. In 2012 Ms. Haag brought her personal laptop to a worksite to test network connections while her Aldridge laptop was being repaired. Ms. Haag's personal laptop was destroyed after it was inadvertently knocked to the ground by another employee. As a result, Ms. Haag purchased a new personal laptop computer and submitted to Aldridge a request for

reimbursement. Aldridge denied Ms. Haag's reimbursement request because she had not been directed to take her personal laptop to work. Aldridge had earlier denied Ms. Haag's request to be reimbursed for the cost of a new printer that she had purchased.

### E. Meals

Ms. Haag testified that in 2012 she bought dinner for several union employees to lift their spirits when they were required to work late. The record shows that Mr. Haag purchased meals while working for Aldridge in Champaign, Illinois, and Daytona Beach, Florida.

## III. Aldridge's Employee Reimbursement Policy

Petitioners testified that they did not believe that Aldridge maintained a formal employee expense reimbursement policy. In his 10 years of employment as a union electrician, Mr. Haag rarely requested or received reimbursement for any work-related expenses. Ms. Haag also testified that she generally was not reimbursed for work-related expenses. Aldridge typically reimbursed her, however, for office supplies and materials that she purchased in her capacity as a project manager. To request reimbursement, Ms. Haag submitted receipts to her division manager, and she would receive the reimbursement in her next paycheck.

## IV. Petitioners' Office Space

Petitioners maintained a 60-square-foot office in the basement of their home which included a desk, a desktop computer, and filing cabinets. The filing cabinets held both personal and work-related documents. Petitioners used the office for both personal and work-related purposes, including checking work-related emails, maintaining tax-related documents, and preparing their personal income tax returns.

## V. Charitable Contributions

### A. Cash Contributions

Petitioners attended and made donations to separate churches in 2012. Petitioners testified that they each donated approximately $20 per week at their respective churches in 2012. Petitioners did not provide any documentation to substantiate their cash contributions.

### B. Noncash Contributions

During the early months of 2012 Ms. Haag moved out of the couple's home. She testified that she made two sizable donations of various household items to the Salvation Army, including clothing, furniture, and kitchenware.

## VI. <u>Petitioners' 2012 Tax Return</u>

Ms. Haag began to prepare the couple's joint Federal income tax return for 2012 in early January 2013 using TurboTax software. Petitioners' vehicle mileage logs were destroyed when their basement office flooded on January 30, 2013. Ms. Haag testified that she had substantially completed the couple's tax return before the flooding occurred.

Petitioners reported total income of $141,657 comprising wages of $86,110, taxable refunds of $349, taxable pensions of $29,095, and unemployment compensation of $26,103. Petitioners attached a Schedule A, Itemized Deductions, to their tax return and claimed, in pertinent part, deductions for charitable gifts of $5,427 ($2,000 of cash gifts and $3,427 of gifts other than by cash or check) and unreimbursed employee business expenses of $40,783 (before application of the 2% limitation prescribed in section 67(a)).

Petitioners attached Form 8283, Noncash Charitable Contributions, to their tax return and reported donations of various items to the Salvation Army and a veterans charity. Petitioners reported that they used "Comparative sales" to determine the fair market value of the items they donated. On a supplemental schedule Ms. Haag assigned a value of $2,082 to donated clothing and $1,087 to donated furniture and kitchenware.

Petitioners also attached to their tax return two Forms 2106-EZ, Unreimbursed Employee Business Expenses. Specifically, they reported driving 55,000 miles for business purposes (19,000 and 36,000 miles for Mr. Hagg and Ms. Haag, respectively) and claimed a deduction of $30,525 for their combined vehicle expenses using the standard mileage rate of 55.5 cents per mile.[3] In addition, they reported parking fees, tolls, and transportation expenses of $1,002 ($177 and $825 for Mr. Haag and Ms. Haag, respectively), other business expenses of $9,203 ($2,195 and $7,008 for Mr. Haag and Ms. Haag, respectively),[4] and meals and entertainment expenditures attributed to Ms. Haag of $53 (after application of the 50% limitation prescribed in section 274(n)(1)).

Ms. Haag also completed a worksheet to determine the amount of a deduction that they might be entitled to for the business use of their home. Because petitioners had claimed other unreimbursed employee business expenses

---

[3]The Commissioner generally updates the optional standard mileage rates annually. See sec. 1.274-5(j)(2), Income Tax Regs. The standard mileage rate of 55.5 cents per mile for 2012 is set forth in Notice 2012-1, sec. 2, 2012-2 I.R.B. 260, 260.

[4]Ms. Haag's other business expenses appear to include depreciation of approximately $6,000 attributable to her Dodge Journey.

in excess of the wages they attributed to the business use of their home, they did not claim a home office deduction on their 2012 tax return.[5]

VII. Pretrial Developments

As previously mentioned, petitioners' vehicle mileage logs were destroyed when their basement flooded in late January 2013. Shortly before trial petitioners and their attorneys attempted to reconstruct the number of miles that they drove for business purposes using their employment time cards and vehicle service records. They estimated that Mr. Haag and Ms. Haag drove 13,705 and 24,631 miles for business purposes in 2012, respectively.

Discussion

The Commissioner's determination of a taxpayer's liability in a notice of deficiency normally is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Although petitioners assert that the burden of proof should shift to respondent as to certain factual issues, they have failed to show that they satisfied all of the relevant requirements prescribed in section 7491(a)(2). Therefore, the burden of proof as to any relevant factual issue does not shift to

_____

[5]Petitioners maintain that if the Court sustains respondent's determination disallowing deductions for other unreimbursed employee business expenses, they would be entitled to a deduction for a home office for 2012.

respondent under section 7491(a).  See sec. 7491(a)(1) and (2); Higbee v.

Commissioner, 116 T.C. 438, 442-443 (2001).

Deductions are a matter of legislative grace, and the taxpayer generally

bears the burden of proving entitlement to any deduction claimed.  Rule 142(a);

INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co.

v. Helvering, 292 U.S. 435, 440 (1934).  A taxpayer must substantiate deductions

claimed by keeping and producing adequate records that enable the Commissioner

to determine the taxpayer's correct tax liability.  Sec. 6001; Hradesky v.

Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir.

1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965).  A taxpayer

claiming a deduction on a Federal income tax return must demonstrate that the

deduction is allowable pursuant to a statutory provision and must further

substantiate that the expense to which the deduction relates has been paid or

incurred.  Sec. 6001; Hradesky v. Commissioner, 65 T.C. at 89-90.

When a taxpayer establishes that he or she paid or incurred a deductible

expense but fails to establish the amount of the deduction, the Court normally may

estimate the amount allowable as a deduction.  Cohan v. Commissioner, 39 F.2d

540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743

(1985).  There must be sufficient evidence in the record, however, to permit the

Court to conclude that a deductible expense was paid or incurred in at least the amount allowed.  Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

The Court may permit a taxpayer to substantiate expenses through secondary evidence where the underlying documents have been unintentionally lost or destroyed.  Boyd v. Commissioner, 122 T.C. 305, 320 (2004); Davis v. Commissioner, T.C. Memo. 2006-272.  A taxpayer is required, however, to reconstruct pertinent records to the fullest extent possible.  See Roumi v. Commissioner, T.C. Memo. 2012-2; Chong v. Commissioner, T.C. Memo. 2007-12.  In deciding whether a taxpayer has satisfied his or her burden of substantiating an expense, we are not required to accept the taxpayer's self-serving, undocumented testimony.  Niedringhaus v. Commissioner, 99 T.C. 202, 219-220 (1992); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

I.  Unreimbursed Employee Business Expenses

Under section 162(a), a deduction is allowed for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.  The determination of whether an expenditure satisfies the requirements for deductibility under section 162 is a question of fact.  See Commissioner v. Heininger, 320 U.S. 467, 475 (1943).  The term "trade or business" includes performing services as an employee.  Primuth v. Commissioner, 54 T.C. 374, 377-

378 (1970). However, expenses for which an employee could claim reimbursement from his or her employer, but does not, are not ordinary and necessary expenses. See Podems v. Commissioner, 24 T.C. 21, 22-23 (1955).

A deduction normally is not available for personal, living, or family expenses. Sec. 262(a). The Court is not obliged to accept testimony that is self-serving and uncorroborated by objective evidence. See Cluck v. Commissioner, 105 T.C. 324, 338 (1995).

As a preliminary matter, the record shows that Aldridge reimbursed Ms. Haag for some expenses that she incurred in her capacity as a project manager. It also appears that Mr. Haag was reimbursed for some extraordinary work-related expenses. We are convinced, however, that petitioners generally were not eligible to be reimbursed for routine work-related expenses such as transportation, work clothing, and tools.

Section 274(d) prescribes stringent substantiation requirements to be met before a taxpayer may deduct certain categories of expenses, including meals and entertainment expenditures and expenses related to the use of listed property as defined in section 280F(d)(4)(A). See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd, 412 F.2d 201 (2d Cir. 1969). As relevant here, the term "listed property" includes, inter alia, automobiles. Sec. 280F(d)(4)(A)(i). To satisfy the

requirements of section 274(d), a taxpayer generally must maintain records and documentary evidence which, in combination, are sufficient to establish the amount, date, and business purpose for a covered expenditure or business use of listed property. Sec. 1.274-5T(b)(6), (c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

A. Vehicle and Parking Expenses

Petitioners claimed a deduction of $30,525 for vehicle expenses on their 2012 tax return. At trial, however, Mr. Haag and Ms. Haag significantly reduced the number of estimated miles they had driven for business purposes in 2012 to 13,705 and 24,631 miles, respectively. They offered scant objective evidence to support their testimony regarding parking expenses.

Respondent concedes that petitioners are entitled to a deduction of $183 for Mr. Haag's vehicle expenses. Specifically, respondent agrees that Mr. Haag drove 330 miles for business purposes in 2012--round trip mileage from petitioners' residence to Champaign, Illinois, where he performed work for Aldridge. The deduction of $183 is the product of 330 miles multiplied by the standard mileage rate of 55.5 cents per mile.

Mr. Haag's reconstructed mileage records also indicate that he drove 76 miles round trip to Chicago Midway International Airport in connection with a trip

to Daytona, Florida, to perform work for Aldridge. We conclude that petitioners are entitled to a further deduction of $42 (i.e., 76 miles multiplied by the standard mileage rate of 55.5 cents per mile) to account for these vehicles expenses.

Respondent otherwise maintains that petitioners' vehicle and parking expenses constitute nondeductible personal commuting expenses. As a general rule, a taxpayer's costs of commuting between his or her residence and place of business or employment are nondeductible personal expenses. See Fausner v. Commissioner, 413 U.S. 838, 839 (1973); Commissioner v. Flowers, 326 U.S. 465, 473-474 (1946); sec. 1.262-1(b)(5), Income Tax Regs. There are various exceptions to this general rule. In accordance with Rev. Rul. 99-7, 1999-1 C.B. 361, 362, a taxpayer may deduct travel expenses "incurred in going between the taxpayer's residence and a temporary work location outside the metropolitan area where the taxpayer lives and normally works." As another exception to the general rule, a taxpayer may deduct travel expenses for commuting between the taxpayer's residence and his or her work locations if the residence is the taxpayer's principal place of business. See Strohmaier v. Commissioner, 113 T.C. 106, 113-114 (1999); Rev. Rul. 99-7, supra.

Petitioners contend that they are entitled to a deduction for vehicle expenses because their various worksites were both temporary and outside the metropolitan

area where they lived. Specifically, petitioners argue that, because the jurisdiction of IBEW Local 150 was limited to Lake County, Illinois, work that they performed beyond the Lake County line should be considered outside the metropolitan area. We disagree.

The Court considers all the facts and circumstances in deciding whether particular transportation expenses were incurred in traveling to a worksite unusually distant from the area where the taxpayer lives and normally works. See, e.g., Bogue v. Commissioner, T.C. Memo. 2011-164, aff'd, 522 F. App'x 169 (3d Cir. 2013). In 2012 petitioners resided in Lake County, and neither of them had a place of business to which he or she regularly reported for work. Instead, the vehicle and parking expenses remaining in dispute related to routine round trips from their residence to various temporary worksites up to approximately 65 miles away in either Chicago or Joliet, Illinois. The record reflects that petitioners normally worked in or near Chicago. Without suggesting the adoption of any rigid definition of the term "metropolitan area" for this purpose, we conclude that Lake County and petitioners' work sites in Chicago and Joliet fall within the Chicago metropolitan area. The distances that petitioners routinely traveled to work were not so unusually long as to justify an exception to the general rule that commuting expenses are nondeductible personal expenses.

Petitioners aver in the alternative that Ms. Haag is eligible to deduct her vehicle expenses because she maintained an office at home. They rely on Rev. Rul. 99-7, 1999-1 C.B. at 362, which states in pertinent part: "If an office in the taxpayer's residence satisfies the principal place of business requirements of * * * [section] 280A(c)(1)(A), then the residence is considered a business location * * * [and] the daily transportation expenses incurred in going between the residence and other work locations in the same trade or business are ordinary and necessary business expenses (deductible under * * * [section] 162(a))."

A taxpayer generally is not entitled to deduct any expenses related to a dwelling unit used as a residence during the taxable year. Sec. 280A(a). Expenses attributable to a home office are excepted from this general rule, however, if the expenses are allocable to a portion of the dwelling unit which is exclusively used on a regular basis as the principal place of business for the taxpayer's trade or business. Sec. 280A(c)(1); Lofstrom v. Commissioner, 125 T.C. 271, 277 (2005).

If the taxpayer is an employee, the exception under section 280A(c)(1) will apply only if the exclusive use of the office space is for the convenience of the taxpayer's employer. Section 280A(c)(1) further provides that in this context the term "principal place of business" includes a place of business which is used by the taxpayer for the administrative or management activities of any trade or

business of the taxpayer if there is no other fixed location of the trade or business where the taxpayer conducts substantial administrative or management activities of the trade or business. See Hamacher v. Commissioner, 94 T.C. 348, 353-354 (1990).

Petitioners admitted that they routinely used their basement office space for both business and personal purposes, including checking work-related emails, storing their personal tax records, and preparing personal tax returns. Petitioners did not use the office space exclusively as a principal place of business within the meaning of section 280A(c)(1), nor did they show that the space was used for the convenience of their employers (as opposed to their personal convenience). It follows that petitioners are not entitled to a deduction for the business use of their home under section 280A(c)(1). Because petitioners' residence does not satisfy the principal place of business requirements of section 280A(c)(1)(A), it follows that Ms. Haag was not eligible for the exception to the general rule barring a deduction for what are otherwise personal commuting expenses. See, e.g., Walker v. Commissioner, 101 T.C. 537, 545-546 (1993) (citing and discussing Curphey v. Commissioner, 73 T.C. 766 (1980)).

In sum, petitioners are not entitled to a deduction for vehicle expenses (including the deduction that Ms. Haag claimed for the depreciation of her vehicle) in excess of $225 as discussed above.[6]

B. "Other" Expenses

    1. Work Clothing

Petitioners claim that they are entitled to a deduction of $1,500 for work clothing and boots. The cost of clothes that are "required or essential in an employment, and which are not suitable for general or personal wear and are not so worn" is a deductible expense. Yeomans v. Commissioner, 30 T.C. 757, 767-769 (1958); see Wasik v. Commissioner, T.C. Memo. 2007-148; Beckey v. Commissioner, T.C. Memo. 1994-514.

As previously mentioned, respondent concedes that petitioners are entitled to a deduction of $239 for work clothing (i.e., the cost of two pairs of composite-toe boots). Petitioners testified that they each paid $100 for a Carhartt bib that included a "built-in" tool belt. Considering petitioners' line of work and the harsh weather conditions they worked in, we are convinced these items were required for

---

[6]We note that Ms. Haag would not have been entitled to a deduction for vehicle depreciation in any event. She had elected to use the standard mileage rate method in computing the deductions she claimed for vehicle expenses, and that method includes an allowance for actual operating and fixed costs of a vehicle, including depreciation. See Campana v. Commissioner, T.C. Memo. 1990-395.

their employment and were not generally suitable for personal wear. Accordingly, we conclude that petitioners are entitled to a total deduction of $439 for work boots and clothing, subject to the 2% limit of section 67(a).

2. Tools

Petitioners claim they are entitled to a deduction of $1,000 for work tools. The record includes Home Depot receipts showing that petitioners purchased various tools at a cost of $371. Petitioners' testimony that union electricians are required to purchase and maintain a basic set of tools was forthright and credible. We conclude on this record that petitioners are entitled to a deduction of $371 for tools, subject to the 2% limit of section 67(a).

3. Computer Equipment

Petitioners claim they are entitled to a deduction of $850 related to the purchase of a personal laptop computer and a printer. Ms. Haag purchased the laptop after her personal laptop computer was damaged at an Aldridge worksite. Aldridge declined to reimburse Ms. Haag for the cost of the damaged computer because she had not informed the company in advance of her plan to take the device to the worksite.

Ms. Haag acknowledged at trial that she used her personal laptop computer at the worksite by choice and not as directed by Aldridge. We are not persuaded

that the replacement cost of Ms. Haag's computer and the cost of a new printer constitute ordinary and necessary employee business expenses. Moreover, it is unclear whether Aldridge might have reimbursed Ms. Haag had she notified the company in advance of her plan to take the laptop computer to a worksite. Accordingly, we sustain respondent's determination disallowing a deduction for the combined cost of the laptop computer and printer.

C. Meals and Entertainment

Petitioners claimed a deduction of $53 (after the 50% limit of section 274(n)) for unreimbursed meals and entertainment expenses.

Although Ms. Haag testified that she bought meals for persons under her supervision in order to maintain morale, those expenditures were not ordinary and necessary employee business expenditures. In short, Ms. Haag did not establish that she was required or expected by her employer to incur such expenses as a condition of her employment. See, e.g., Fountain v. Commissioner, 59 T.C. 696, 708 (1973).

The record shows, however, that Mr. Haag purchased meals at a cost of $153 while traveling to perform work for Aldridge in Champaign, Illinois, and Daytona Beach, Florida. We conclude on this record that Mr. Haag was not eligible to be reimbursed by Aldridge for these meals and that he may deduct the

cost of the meals under section 162(a) inasmuch as he was traveling while away from home. See, e.g., Bissonnette v. Commissioner, 127 T.C. 124, 134-135 (2006). Because the deduction for meals and entertainment expenses is subject to the 50% limitation of section 274(n)(1), see Bissonnette v. Commissioner, 127 T.C. at 136-137, we conclude that petitioners are entitled to a deduction for meals and entertainment expenses of $77.

## II. Charitable Contributions

Charitable contributions are deductible only if verified in accordance with regulations prescribed by the Secretary. Sec. 170(a)(1); see Van Dusen v. Commissioner, 136 T.C. 515, 530 (2011). No deduction for a contribution of cash, a check, or a monetary gift in any amount is allowed unless the donor maintains a bank record or a written communication from the donee showing the name of the donee organization, the date of the contribution, and the amount of the contribution. Sec. 170(f)(17). In the case of a charitable contribution deduction of $250 or more, section 170(f)(8)(A) provides that the taxpayer must obtain a contemporaneous written acknowledgment from the donee. Section 170(f)(8)(B) provides in relevant part that the contemporaneous written acknowledgment must include the amount of cash and a description of any property other than cash contributed, whether the donee organization provided any goods or services in

consideration, in whole or in part, for any cash or property contributed, and, if so, a description and good-faith estimate of the value of any goods or services provided by the donee. See sec. 1.170A-13(b), (f), Income Tax Regs. Section 170(f)(8)(C) provides that a written acknowledgment is contemporaneous when the taxpayer obtains it on or before the earlier of (1) the date the taxpayer files a tax return for the year of contribution; or (2) the due date, including extensions, for filing that tax return.[7]

In addition to the written acknowledgment requirement, section 170(f)(11) and related regulations establish more detailed requirements for substantiation of contributions of property other than money. For noncash contributions of $500 or less, the taxpayer must substantiate the contribution with a receipt from the donee indicating the donee's name, the date and location of the contribution, and "[a] description of the property in detail reasonably sufficient under the circumstances." Sec. 1.170A-13(b)(1), Income Tax Regs. For noncash contributions in excess of $500, the taxpayer normally must also maintain written records showing the manner in which the item was acquired, the approximate date

---

[7]Sec. 170(f)(8)(D) provides an exception to the contemporaneous written acknowledgment requirement if the donee organization files a return containing the same information that is required in the contemporaneous written acknowledgment. Petitioners do not assert that this exception applies.

of acquisition, and the cost or adjusted basis of the property.  Id. subpara. (3); see

Lattin v. Commissioner, T.C. Memo. 1995-233.[8]

For noncash contributions, the value of the contribution generally is the fair

market value of the property at the time of contribution.  Hewitt v. Commissioner,

109 T.C. 258, 261 (1997), aff'd without published opinion, 166 F.3d 332 (4th Cir.

1998); sec. 1.170A-1(c)(1), Income Tax Regs.  The fair market value of

contributed property is the price at which the property would change hands

between a willing buyer and a willing seller, neither being under any compulsion

to buy or sell and both having reasonable knowledge of relevant facts.  Sec.

1.170A-1(c)(2), Income Tax Regs.

For purposes of determining whether a taxpayer's donation of property

exceeds the $500 threshold prescribed in section 170(f)(11), all similar items of

property donated to one or more donees are treated as one property (i.e., the values

of all similar items of property contributed to one or more donees are considered

in the aggregate).  See sec. 170(f)(11)(F); sec. 1.170A-13(c)(1)(i), (7)(iii), Income

Tax Regs.

---

[8]If information regarding the acquisition date or cost basis of the property is
not available and the taxpayer attaches a statement to his tax return setting forth
reasonable cause for not being able to provide such information, the taxpayer's
charitable contribution deduction shall not be disallowed on that account.  Sec.
1.170A-13(b)(3)(ii), Income Tax Regs.

A. Cash Contributions

Petitioners claimed a deduction of $2,000 for cash donations made to their respective churches. Petitioners did not produce a written acknowledgment of the contributions from either church, nor did they produce any other records to substantiate the amounts and dates of their reported cash contributions. In the absence of additional corroborating evidence supporting petitioners' trial testimony, respondent's determination disallowing a deduction for cash contributions is sustained.

B. Noncash Contributions

Petitioners claimed a deduction of $3,427 for noncash donations of various items including clothing, furniture, and kitchenware to the Salvation Army and a veterans charity. Petitioners produced a list of donated items that Ms. Haag created when she prepared the couple's tax return, and she purportedly estimated the value of each donated item using "Comparative sales". Ms. Haag assigned a value of $2,082 to donated clothing and $1,087 to furniture and kitchenware.

Petitioners failed to offer any contemporary written acknowledgments from the donee organizations stating whether they were provided any goods or services in return for the donations as required by section 170(f)(8)(A) or receipts or written records as required by section 170(f)(11) and the related regulations.

Accordingly, we sustain respondent's determination limiting petitioners' deduction for noncash charitable contributions to $250.

## III. Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes a penalty equal to 20% of the amount of any underpayment of tax that is attributable to, among other things: (1) negligence or disregard of rules or regulations or (2) any substantial understatement of income tax. The term "negligence" includes any failure to make a reasonable attempt to comply with tax laws, and "disregard" includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c). An understatement means the excess of the amount of the tax required to be shown on the tax return over the amount of the tax imposed which is shown on the tax return, reduced by any rebate. Sec. 6662(d)(2)(A). An understatement is substantial in the case of an individual if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the tax return or $5,000. Sec. 6662(d)(1)(A).

With respect to an individual taxpayer's liability for any penalty, section 7491(c) places on the Commissioner the burden of production, thereby requiring the Commissioner to come forward with sufficient evidence indicating that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. at 446-447.

Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. Id. at 447; see Rule 142(a); Welch v. Helvering, 290 U.S. at 115.

Section 6664(c)(1) provides an exception to the imposition of the accuracy-related penalty if the taxpayer establishes that there was reasonable cause for, and the taxpayer acted in good faith with respect to, the underpayment. Sec. 1.6664-4(a), Income Tax Regs. The determination of whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account the pertinent facts and circumstances. Id. para. (b)(1).

Respondent discharged his burden of production as to negligence under section 7491(c) by showing that petitioners failed to keep adequate records or properly substantiate expenses underlying many of their claimed deductions. See sec. 1.6662-3(b)(1), Income Tax Regs. Moreover, it appears that Rule 155 computations will show that petitioners substantially understated their income tax liability for the year in issue.

Petitioners did not offer a meaningful defense to the imposition of an accuracy-related penalty other than to assert that respondent erred in determining a deficiency and that they are not well versed in tax matters. On this record, we cannot say that petitioners had reasonable cause with respect to their negligence or

any understatement, and, therefore, respondent's determination that they are liable for an accuracy-related penalty under section 6662(a) is sustained.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.